O 91 (Rev. 11/82)

## CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>JOSE YSIDRO FERNANDEZ | DOCKET NO. 14 - 1967M |
|---|---|
| | MAGISTRATE'S CASE NO. |

Complaint for violation of Title 18, United States Code, Section 1349

| NAME OF MAGISTRATE JUDGE<br>Honorable Frederick F. Mumm | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>January 2007 – January 2008 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Beginning in or before January 2007, and continuing through at least January 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant JOSE YSIDRO FERNANDEZ ("defendant"), and others, conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344. The object of the conspiracy was carried out, and to be carried out, in substance, as follows: Defendant would recruit straw buyers for properties, and apply for Home Equity Line of Credit loans in their names after inflating their incomes and omitting liens on the properties to make it appear that the borrowers could qualify for the loans. A co-conspirator would bribe an official at Washington Mutual, which was then a federally-insured financial institution, to approve the loans. Defendant would divide the proceeds of the loan with his co-conspirators. Washington Mutual suffered actual losses of over $1.6 million from this conspiracy.

FILED
CLERK, U.S. DISTRICT COURT
OCT - 2 2014
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Sherine Ebadi |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>Frederick F. Mumm | DATE<br>October 2, 2014 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Andrew Brown, 11th floor, x0102          WARRANT

AB

## AFFIDAVIT

I, Sherine D. Ebadi, being duly sworn, do hereby state the following:

### I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed for five years. I am currently assigned to the Los Angeles Field Office, Long Beach Resident Agency, where I am responsible for investigating violations of federal criminal statues over which the FBI has investigatory jurisdiction, to include, but not limited to, bank fraud, mail fraud, wire fraud, securities fraud, money laundering, conspiracy, and identity theft.  I have received specialized training in these types of investigations.  As a result of my training and experience, I have familiarity with federal laws, to include bank fraud and conspiracy statutes.

2.   This affidavit is made in support of a complaint against and a request that an arrest warrant be issued for JOSE YSIDRO FERNANDEZ ("FERNANDEZ"), aka Jose Hernandez, for violating Title 18, United States Code, Sections 1349 and 1344, conspiracy to commit bank fraud.  This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge or all of the information pertaining to the investigation into this matter.

1

Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

3.   I learned the facts recounted below from witnesses I interviewed, or witnesses for whose interviews I was present, and documents obtained through the course of my investigation.

## II.  SUMMARY OF INVESTIGATION

4.   The FBI has been investigating FERNANDEZ and his connection to a bank fraud conspiracy that occurred between January 2007 and January 2008.  Investigation to date has revealed that FERNANDEZ and others, both known and unknown at this time, caused approximately $15,000,000 worth of fraudulent loans to be submitted and approved by Washington Mutual Bank ("WAMU") during this time period.  I know from my training and experience that WAMU was a federally insured financial institution at this time.

5.   FERNANDEZ and others used the identities of straw borrowers to apply for home equity lines of credit ("HELOCs").  FERNANDEZ and others submitted materially false and fraudulent information and documentation in support of the HELOC applications.  FERNANDEZ and others inflated income and asset information and falsified employment and occupancy information for straw borrowers.  FERNANDEZ and others falsified and/or omitted information regarding superior liens against properties

in order to make the properties appear to have more equity in them.   FERNANDEZ and others grant-deeded properties to straw borrowers other than the original mortgage holders in order to make the borrowers appear to have lower mortgage liabilities than they actually had.   FERNANDEZ and others paid bribes to an insider at WAMU to approve, fund, and disburse the proceeds from the fraudulent HELOCs.   FERNANDEZ and others financially profited from the scheme by receiving large portions of the HELOC amounts as kickbacks for referring straw borrowers.

      6.   FERNANDEZ and others knew that the straw borrowers were unable to pay back the loans and that the properties against which the loans were obtained did not have sufficient equity to support the additional liens.   FERNANDEZ and others knew that their scheme would result in a significant loss to WAMU.

### III. STATEMENT OF PROBABLE CAUSE

**A.   FERNANDEZ Confesses**

      7.   In a non-custodial interview with FERNANDEZ at his residence on July 25, 2012, FERNANDEZ told me that he learned about the WAMU HELOCs from his associate Anthony Ferrazzi ("Ferrazzi").   FERNANDEZ told me that Ferrazzi could get HELOCs up to $500,000 even if the properties already had first and second liens.   FERNANDEZ told me that Ferrazzi said the borrower just had to be on title and be willing to pay 10% of the HELOC

amount.   FERNANDEZ told me that he knew Ferrazzi had "people who

were helping him" get the loans approved and that's why 10% of

the HELOC amount was taken off the top.

        8.   FERNANDEZ told me that he knew the 10% was going to

Ferrazzi's associate, a Persian man named "Bobby".   FERNANDEZ

told me that Bobby's girlfriend was Crystal Blair ("Blair").   I

know that the "Bobby" to which FERNANDEZ was referring is Bahman

Behzadi, aka Bobby Behzadi ("Behzadi"), aka Bobo.

        9.   FERNANDEZ told me that he obtained WAMU HELOCs in

Cesar Aguayo, Miguel Aguayo, Ubaldo Aguayo, Mireya Gallo, and

Gabriela Perez's names.   FERNANDEZ told me that he referred

these straw borrowers to Ferrazzi and Behzadi for the purpose of

obtaining HELOCs.   FERNANDEZ told me that he provided all of the

straw buyers' information, to include personal identifiers,

income, employment, and asset information to Ferrazzi for the

purpose of the HELOC applications.   FERNANDEZ told me that he

knew the income and asset information he provided was falsely

inflated in order to qualify the straw borrowers for the HELOCs.

FERNANDEZ told me that he knew if he provided the correct income

and asset information for the straw borrowers, they may not have

qualified for the HELOCs.

        10.   FERNANDEZ told me that once the HELOCs funded, Behzadi

would take the 10% cut off the top.   FERNANDEZ knew that

Ferrazzi and/or Behzadi were able to go to the bank and withdraw

proceeds from the borrowers' HELOCs without the borrowers' presence or authorization.

11. FERNANDEZ told me that once the HELOCs funded he received the remainder of the HELOC proceeds from Ferrazzi. FERNANDEZ told me that he controlled the proceeds and used the money at his discretion to pay off personal debts, purchase other properties, and make personal investments.

12. FERNANDEZ told me that he quit claimed at least one property from one straw borrower's name into another straw borrower's name so that he could obtain a HELOC against that property. I know that quit claiming properties into the names of straw borrowers is a common way to deceive the lender into thinking that there are no other mortgage liens against the property.

B.  Chad Procter's interviews about FERNANDEZ's fraud

1. In two non-custodial interviews with Chad Procter ("Procter") in Chatsworth, California on February 28, 2013 and March 26, 2013, Procter voluntarily told me the following.

2. Procter worked as a broker and loan officer for American Wholesale Finance (AWF) where FERNANDEZ had an office.

3. Procter told me FERNANDEZ told him about a way to get HELOCs from WAMU for up to $250,000 against properties even if they did not have any equity. Procter told me that FERNANDEZ

charged $30,000 per HELOC and that he took an additional amount
equal to two years of HELOC payments off the top.

4. Procter told me that he thought FERNANDEZ had someone
"inside" the bank helping him, because the borrower did not have
to fill out an application, sign any documents, or be present to
authorize the disbursement of funds. Procter believed the
person helping FERNANDEZ was named "Bobby" because after the
first HELOC Procter did with FERNANDEZ, FERNANDEZ told Procter
that "Bobby" said they could not do any more loans.

5. Procter told me that he provided FERNANDEZ with
Alejandro Aldana's personal identifying information for the
purpose of obtaining a $250,000 HELOC against a property at 9353
Farralone Avenue in Chatsworth, California. Procter told me
that Aldana did not complete an application, sign any documents,
and was not present at the bank when FERNANDEZ had the proceeds
of the HELOC disbursed.

4. Procter told me that he met FERNANDEZ at a WAMU branch
in Woodland Hills, California when Aldana's HELOC closed.
Procter witnessed FERNANDEZ instructing the WAMU employee how to
disburse the proceeds. Procter told me that FERNANDEZ took
$30,000 as a commission, an additional $20,000 as a personal
loan, and approximately $35,000 for two years of payments on the
HELOC. Procter told me that FERNANDEZ gave Procter a check for
$148,750. Aldana was not present and did not authorize these

disbursements.  Procter told me that while at the WAMU bank, FERNANDEZ called a man named "Bobby".

5. Procter told me that he prepared a quit claim deed that signed over a property at 10347 Jordan Avenue in Chatsworth, California from Cesar Hernandez to FERNANDEZ.

C. Other Interviews

1. In a non-custodial interview on January 2, 2013 in Burbank, California, Alex Rodriguez ("Rodriguez") told me the following.  Rodriguez worked at a WAMU branch on Topanga Canyon in Woodland Hills.  FERNANDEZ was one of the customers at Rodriguez's WAMU branch.  FERNANDEZ approached Rodriguez and asked him if he could do HELOCs.  Rodriguez originated two HELOCs for FERNANDEZ, but Rodriguez never had any contact with the borrowers and all information and documentation was through FERNANDEZ.

2. In a non-custodial interview on March 7, 2013 in Chatsworth, California, Alejandro Aldana ("Aldana") told me the following.  Aldana purchased a property at 9353 Farralone Avenue in Chatsworth, California for Chad Procter.  Aldana never applied for, signed documents related to, or authorized disbursements from a HELOC against his property on Farralone Avenue.

3. In a non-custodial interview on April 22, 2013 in Los Angeles, Richard Casillas told me the following.  A HELOC in the

amount of $250,000 against a property at 10347 Jordan Avenue in Chatsworth, California was taken out in Casillas' name without Casillas' knowledge or permission.  Casillas did not sign any documents or authorize any disbursements from this HELOC. Casillas was told by his son in law, Alex Fernandez ("Alex Fernandez") that JOSE FERNANDEZ got the HELOC through his contact at WAMU.  Alex Fernandez told Casillas that FERNANDEZ was able to receive the proceeds of this HELOC without Casillas' authorization because FERNANDEZ paid between $20,000 and $30,000 to a WAMU bank employee who "[took] care of everything." Casillas told me that his signatures on the HELOC documents were forgeries.  Casillas told me that he had never met with a notary named Cesar Aguayo as indicated on the notarized HELOC documents.  Casillas told me that the income listed for him on the HELOC documents was also inflated.

D. Documents Connecting FERNANDEZ to the Fraud

I reviewed boxes of documents left behind by Behzadi at his former residence.  Many of these documents connect FERNANDEZ to the HELOC fraud scheme.  In particular, these documents show FERNANDEZ's knowledge of false information provided to WAMU for the purpose of obtaining HELOCs.  The documents include loan applications, pay stubs, mortgage statements, Form W2s, and bank statements containing false information for individuals referred by FERNANDEZ to Behzadi for HELOCs.  The documents also include

written communication between FERNANDEZ and Behzadi in which FERNANDEZ references putting someone who is not the owner of the property on title just prior to applying for a HELOC in that person's name.

**E. The Fraudulent HELOCS**

### The Jordan Avenue HELOC

1. I reviewed documents provided by WAMU which showed that in October 2007, an application for a HELOC against 10347 Jordan Ave., Chatsworth, California ("Jordan Ave.") was submitted in Casillas' name. The application contained materially false and fraudulent information regarding Casillas' income, liabilities against the property, ownership, and occupancy.

2. Public records show that Jordan Ave. was quit claimed to Casillas on October 25, 2007 by Cesar Hernandez.

3. I reviewed an email sent by FERNANDEZ to Behzadi on October 23, 2007 which contained the following statements: "Good day Bobo just sending you this e mail for another heloc this guy will be on title in the next two days here is the scenario [sic]". In addition, the email included Casillas' personal identifiers and the address for Jordan Ave. Handwritten on the printout of this email was the statement, "Need 1st Mortgage Statement to show $78,000" and the word "Approved".

4. The documents provided by WAMU show that a HELOC was applied for in Casillas' name against Jordan Ave. on October 27,

2007.  This HELOC was approved in the amount of $250,000 on October 29, 2007.  Jordan Ave. was appraised at $462,000 for the purposes of the HELOC and approved with a 70% Loan to Value. WAMU approved the HELOC as an owner occupied, primary residence. Casillas told me he never resided, nor intended to reside at Jordan Ave.  WAMU approved the HELOC at a 27% debt to income ratio.

5. Public records show that Cesar Hernandez had a mortgage lien against Jordan Ave. in the amount of $490,000.  A notice of default was filed for this lien on December 12, 2007.  This lien was not disclosed to WAMU when the HELOC was applied for.

7. On November 7, 2007, proceeds from this HELOC were disbursed as follows: $223,000 to Alex Fernandez, $22,500 to Crystal Blair, $2,000 to open a WAMU account in Casillas' name and $2,500 in cash.

5. Procter told me that Jordan Ave. was a property that previously belonged to Alejandro Aldana.  Procter helped Aldana sell this property to Cesar Hernandez.  At some point Hernandez told Procter that he was not able to make the mortgage payments. Procter told FERNANDEZ that Hernandez was going into default. FERNANDEZ offered to take over payments on Jordan Ave. if Hernandez quit claimed the property to him.  Procter printed out a quit claim deed so that Hernandez could sign the property over to FERNANDEZ.

6. Casillas told me that his son-in-law is Alex Fernandez and that Alex Fernandez and JOSE FERNANDEZ were friends from high school who did some business together. Casillas told me that Alex Fernandez asked him to sign for a construction loan for Alex Fernandez's business. Casillas told me that he later learned the construction loan was actually a HELOC against Jordan Ave. Casillas told me he never owned Jordan Ave. and that he believed JOSE FERNANDEZ was the owner of Jordan Ave.

7. The principle loss to WAMU on this HELOC is $250,000.

### The Farralone Avenue HELOC

1. I reviewed documents provided by WAMU that showed in October 2007, an application for a HELOC against 9353 Farralone Ave., Chatsworth, California ("Farralone") in Alejandro Aldana's name was submitted to WAMU. The application contained materially false and fraudulent information.

2. Farralone had an existing first lien of $897,750 against it. The WAMU HELOC application falsely disclosed a first lien of only $363,450. The HELOC was approved at a Loan to Value ratio (LTV) of 68%. The property was appraised at $902,000.

3. Aldana told me that he purchased Farralone for Chad Procter. Procter was going to live at the property and pay the mortgage. Aldana told me that he had no knowledge that a HELOC was obtained against Farralone. Aldana did not learn of the WAMU HELOC until he received notice in the mail of a $250,000

11

loan against Farralone.  When Aldana asked Procter about the HELOC, Procter told him not to worry about it because it was not his loan.  Aldana never applied for a WAMU HELOC.  Aldana never knowingly signed documents for a WAMU HELOC.  Aldana never withdrew funds from a WAMU HELOC.  Aldana never authorized anyone else to apply for or withdraw funds from a HELOC in his name.

4. Procter told me that after Farralone was purchased, he was having trouble paying the mortgage.  Procter told me that he gave Aldana's personal identifying information to FERNANDEZ so that FERNANDEZ could obtain a WAMU HELOC against Farralone in Aldana's name.  FERNANDEZ told Procter he would use his contact at WAMU to obtain a HELOC for Farralone, but he charged $30,000 for this.

5. The WAMU documents showed that the Farralone HELOC funded in October 30, 2007 in the amount of $250,000.  From this amount, Procter received $148,750 in the form of a cashier's check.  FERNANDEZ received three cashier's checks in the amounts of $35,500, $9,125, and $30,000.  Additionally, $20,000 was paid out via cashier's check to Crystal Blair.

6. The principle loss to WAMU on this HELOC is $250,000.

### The Huston Street HELOC

1. I reviewed documents provided by WAMU which showed that in October 2007, an application for a WAMU HELOC against 14818

Huston Street, Sherman Oaks, California ("Huston Street") was submitted in Mireya Gallo's name.  The application contained materially false and fraudulent information.

2.  Huston Street was purchased by Elvia Rodriguez, FERNANDEZ's aunt, in March 2006 for $843,500 with two liens of $674,800 and $168,700 respectively.  In approximately September 2007, Huston Street was quit claimed to FERNANDEZ.  In September 2007, FERNANDEZ obtained a $295,000 private loan against Huston Street.  In October 2007, Huston Street was quit claimed to Mireya Gallo.  In October 2007, a $250,000 WAMU HELOC was obtained against Huston in Gallo's name.

3.  The WAMU documents showed that the superior liens on Huston Street were falsified.  In actuality, there were three superior liens against Huston Street totaling $1,138,500.  A false mortgage statement was provided to WAMU showing only a first lien of $247,000 against Huston Street.  WAMU appraised the property at $874,000 and approved the $250,000 HELOC at 56% LTV.

4.  FERNANDEZ told me that he asked Gallo to obtain a HELOC against Huston Street because Gallo had better credit than he or his aunt.  FERNANDEZ told me that he had Elvia Rodriguez quit claim Huston Street to Gallo for the purpose of obtaining a HELOC.  FERNANDEZ told me that he intended to remodel and sell Huston Street, but he ran out of money.

13

5.   The WAMU documents showed that the Huston Street HELOC funded in October 2007.  From the $250,000, $118,000 was paid to Miguel Aguayo and then returned to Gallo; $105,000 was paid to Julio Gallo; $85,000 was paid to Fernando Gallo; $20,000 was paid to Crystal Blair; $15,000 was paid directly to FERNANDEZ; and $5,000 was paid to Ferrazzi.

6.   FERNANDEZ told me that he controlled the proceeds of the Huston Street HELOC and that he used these proceeds to pay off various personal debts.

7.   The principle loss to WAMU on this HELOC is $250,000.

### The Ventura Canyon HELOCs

1. I reviewed public source documents which showed that in August 2007, a WAMU HELOC in the amount of $250,000 against 3676 Ventura Canyon Avenue, Sherman Oaks, California ("Ventura Canyon") was obtained in Cesar Aguayo's name.

I also reviewed documents provided by WAMU which showed that a second WAMU HELOC was obtained against Ventura Canyon in Miguel Aguayo's name.  The second HELOC was for $150,000 and funded in January 2008.  The WAMU documents show that this HELOC application contained materially false and fraudulent information.

2. FERNANDEZ told me that Miguel and Cesar Aguayo were friends of his.  FERNANDEZ told me that he obtained WAMU HELOCs

in Miguel and Cesar Aguayo's names and that he controlled the proceeds of those HELOCs.

3.   Ventura Canyon was purchased by Cesar Aguayo for $950,000 in May 2007 and had two liens against it for $800,000 and $150,000 respectively.  In August 2007, a WAMU HELOC for $250,000 was obtained against Ventura Canyon.  In October 2007, Ventura Canyon was quit claimed to North American Custom Home Builders, a company established by FERNANDEZ.  In November 2007, North American Home Builders sold Ventura Canyon to Miguel Aguayo for $1,440,000.  Miguel Aguayo obtained a loan for $1,008,000 at this time.  In January 2008, Miguel Aguayo obtained a WAMU HELOC for $150,000 against Ventura Canyon.  At this time, Ventura Canyon appraised at $934,000 and the HELOC was approved with a 63% LTV.

3. The WAMU documents showed that the superior liens on Ventura Canyon were falsified.  In actuality, Miguel Aguayo had a first lien of $1,008,000 against Ventura Canyon.  False information was provided with Miguel Aguayo's HELOC application showing a superior lien against the property in the amount of $434,914.

4. The WAMU documents showed that the Ventura Canyon HELOC funded in January 2008 in the amount of $150,000.  From this amount $10,000 each went to Shahed Hyder and Ophelia Kilani and $130,000 was used to open a checking account in Miguel Aguayo's

15

name.  From that $130,000, $10,000 was withdrawn in cash,
$25,000 was paid to Cesar Aguayo and $95,000 was used to make a
payment on another HELOC obtained by Miguel Aguayo.

  5. The principle loss to WAMU on this HELOC is $150,000.

**The Tamarack Avenue HELOC**

  1. I reviewed documents provided by WAMU which showed that
in October 2007, an application for a HELOC against 10575
Tamarack Ave., Pacoima, California ("Tamarack Avenue") in
Gabriela Perez's name was submitted to WAMU.  The application
contained materially false and fraudulent information.

  2. Tamarack Avenue was quit claimed from owner Wendy
Hernandez to Jose Fernandez in or around August 2007.  The
existing liens against Tamarack Avenue totaled $350,000.  The
existing liens against Tamarack Avenue were in default at this
time.  In October 2007, FERNANDEZ quit claimed Tamarack Avenue
to Gabriela Perez.  Shortly after this quit claim, a HELOC
application against Tamarack Avenue was applied for in Perez's
name.  No existing liens were disclosed to WAMU in the HELOC
application.  WAMU appraised Tamarack Avenue at $502,000 and
approved a $250,000 HELOC at an LTV of 71%.

  3. The WAMU documents showed that the Tamarack Avenue
HELOC funded in October 2007.  From the $250,000 HELOC funds,
cashier's checks were disbursed as follows: $69,000 to Mireya
Gallo, FERNANDEZ's girlfriend; $5,000 to Tony Ferrazzi; $16,000

16

to Crystal Blair; $50,000 to Julio Gallo, FERNANDEZ's girlfriend's father who had loaned FERNANDEZ money; $70,000 to Jose Frias, a person to whom FERNANDEZ owed money; $20,000 to Miguel Aguayo, FERNANDEZ's friend; $8,000 to Daniel Gil, FERNANDEZ's friend; $6,000 to Perez; and $4,000 cash.

4.   I reviewed documents from Behzadi's former residence that pertained to Perez and the Tamarack Avenue HELOC.  I reviewed one handwritten document that contained Perez's personal identifiers along with information for a false employment.  The false employment listed on the document was "Elite Development and Real Estate", the company established by FERNANDEZ to handle the purchase and sale of properties.

5.   FERNANDEZ told me that he obtained a HELOC against Tamarack in Perez's name because his own credit was bad. FERNANDEZ told me that he controlled the proceeds of the Tamarack HELOC and used much of those proceeds to pay off personal debts.

6.   The principle loss to WAMU on this HELOC is $250,000.

### The Biggs Road HELOC

1.   I reviewed documents provided by WAMU which showed that in September 2007, an application for a HELOC against 30058 Briggs Rd., Agua Dulce, California ("Briggs Road") in Miguel Aguayo's name was submitted to WAMU.  The application contained materially false and fraudulent information.

2.   Briggs Road was purchased by Andrew Alvarez in June 2005 for $310,000 with a $248,000 first lien.  In December 2005, Alvarez quit claimed Briggs Road to Miguel Aguayo.  In September 2007, Miguel Aguayo obtained a $250,000 HELOC against Briggs Road.  The WAMU HELOC application falsely stated that there was no first lien against Briggs Road.  The property was appraised at $340,000 and was approved for a HELOC at a 73% LTV.

3.   The WAMU documents showed that Briggs Road funded in September 2007.  From the $250,000, $145,000 was paid to Galaxy Escrow; and multiple advances of cash were withdrawn from the WAMU branch.  In addition, $118,000 was wired into Miguel Aguayo's account from Mireya Gallo's account and then $148,000 was paid to Mireya Gallo's WAMU account from Miguel Aguayo's HELOC funds.

4.   FERNANDEZ told me that he moved the $118,000 from Gallo's account to Miguel Aguayo's account and the $148,000 from Miguel Aguayo's account back to Gallo's account in order to pay off various debts.  FERNANDEZ also told me that he had the $145,000 cashier's check to Galaxy Escrow issued in order to put a down payment on another property he was purchasing.

5.   Although payments have been made on the Briggs Road HELOC, subsequent withdrawals have resulted in a principle loss to WAMU of $250,000.

### The Sumac Drive HELOC

1.    Public source documents show that in September 2007, a
HELOC against 4017 Sumac Drive, Sherman Oaks, California ("Sumac
Drive") in John Noguera's name was funded by WAMU in the amount
of $250,000.

2.    FERNANDEZ told me that Noguera was his business
partner at Elite Development and Real Estate.

3.    Noguera purchased Sumac Drive in February 2007 with a
first lien of $708,000 and a second lien of $177,000 for a total
of $895,000.    In September 2007, a WAMU HELOC in the amount of
$250,000 was received.    In December 2008, the property had
foreclosed.

4.    I reviewed documents found in Behzadi's previous
residence.    In particular I reviewed a mortgage statement for
Noguera's loan at Sumac.    The mortgage statement was only for
the second lien.    Handwritten on the bottom of the statement was
Noguera's personal identifiers and the word "paid".

5.    The principle loss to WAMU for this HELOC is $250,000.

### Attempted HELOCs

1. Based upon documents obtained from Behzadi's former
residence, I believe that FERNANDEZ attempted to obtain HELOCs
on a number of other properties, but was unsuccessful.

2. Documents were found for Ubaldo Aguayo and a property at
11127 Hatteras St., North Hollywood, California.    Specifically,

pay stubs, form W2s, and bank statements were found in Ubaldo Aguayo's name. These documents purport that Ubaldo Aguayo had more than $600,000 in his bank account and earned more than $14,000 per pay period for his work at Elite Development and Real Estate. FERNANDEZ told me that Ubaldo Aguayo worked construction. FERNANDEZ also told me that Ubaldo Aguayo was his friend and that he obtained a HELOC in Ubaldo Aguayo's name.

3. Documents were found for Christopher Yee and a property at 13854 Valley Vista Blvd., Sherman Oaks, California. Specifically, a verification of employment from Victor Martinez, pay stubs, form W2s, mortgage statements, a copy of Yee's driver's license and social security card, and a "submission form" from FERNANDEZ were found relating to Yee and the property on Valley Vista Blvd. These documents purport that Yee earned more than $12,000 per pay period as an employee of North American Custom Home Builders, a company established by FERNANDEZ and used as a false employment for his straw borrowers. Additionally, the submission form printed from FERNANDEZ's email contains handwriting requesting a $500,000 HELOC. FERNANDEZ told me that Victor Martinez would create false verifications of employment for straw borrowers as needed.

4. Documents were found for Cesar Aguayo and a property at 3522 Cody Road, Sherman Oaks, California. Specifically mortgage statements for Cesar Aguayo's supposed mortgage on this property

were found.  FERNANDEZ told me and public source documents confirm that this property was owned by John Noguera.  FERNANDEZ told me that Noguera needed money to complete the remodel of this property so that he could sell it.

5.  Documents were found for Cesar Fernando Rios and a property at 6835 Vesper, Van Nuys, California.  Specifically, a document titled "Heloc Application" was found containing information for Rios and this property.  The words, "needs $500,000" were handwritten at the top of the form.  According to public source documents, this property was also owned by Noguera and not by Rios.

6.  Documents were found for Nicolas Escuadra Vera and a property at 14830 Huston St., Sherman Oaks, California. Specifically, a submission form printed out from FERNANDEZ's email containing information about Vera and the property was found.  The submission form purported that Vera owned the property and was employed by North American Custom Home Builders.  Public source information shows that this property was owned by Rubiela Celaya and quit claimed to FERNANDEZ in October 2007.

**Loss from the Fraudulent HELOCs Referred through FERNANDEZ**

1. I reviewed documents and loss figures provided by WAMU which showed that as a result of the above listed HELOCs, WAMU

21

suffered a loss of at least $1,650,000 as a result of the HELOCs submitted and funded through FERNANDEZ.

## IV. Relevant Conduct

1. FERNANDEZ was also involved in loan origination fraud in 2006 and 2007. Specifically, FERNANDEZ was involved in submitting false loan applications for straw borrowers' purchase of properties. FERNANDEZ told me that he submitted these false loan applications through loan officer Natalia Benshaw. FERNANDEZ told me that he knew the loan applications contained materially false information regarding the borrowers' income and assets. FERNANDEZ told me that he knew this information needed to be falsified in order to qualify the borrowers for the loan. FERNANDEZ told me that he knew false verifications of employment and verifications of deposit were being submitted with the falsified loan applications. FERNANDEZ told me that he knew these documents needed to be falsified in order for the borrowers to qualify for the loans.

2. It is believed that FERNANDEZ was involved in the submission of at least 10 false initial purchase loan applications that funded. The estimated loss of these initial purchase loans is over $7,000,000.

## V. CONCLUSION

6. Based on the foregoing, I submit there is probable cause to believe that FERNANDEZ committed bank fraud and

conspiracy to commit bank fraud in violation of Title 18, United States Code, Sections 1344 and 1349.

SHERINE EBADI, Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me this 2nd day of October, 2014.

Frederick F. Mumm

UNITED STATES MAGISTRATE JUDGE

23